**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PACKAGING SUPPLIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 08-cv-400 |
| | ) | |
| HARLEY-DAVIDSON, INC., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of a three-count complaint [1] filed by Plaintiff, Packaging Supplies, Inc. ("PSI"), against Defendant, Harley-Davidson, Inc. ("Harley-Davidson"), for violations of state tort law and federal antitrust law. Before the Court is Defendant's motion to dismiss Plaintiffs' complaint [9] for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, Defendant's motion to dismiss is denied.

**I.      Background**[1]

PSI's business is plastic merchandise bags. These bags are not sold in stores; rather they are used by consumers for carrying away their purchases after transactions with PSI's clients. The bags are custom printed, and since 1964 PSI has been selling them to "retailers, manufacturers and franchise operators" throughout the United States. Compl. ¶ 6. Beginning around 2002, numerous Harley-Davidson motorcycle dealerships (125 out of 679) were among PSI's clients. These dealerships are independently owned and licensed, and the bags that PSI

---

[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

made were customized for each dealer-client (a process which, PSI states, could take months). *Id.* at ¶¶ 7, 10-12.

PSI alleges that Harley-Davidson sent an "edict" to its dealers directing them not to purchase their bags from PSI and instead to purchase their bags only from Harley-Davidson's merchandising division ("the Notice"). *Id.* at ¶ 1. Plaintiff does not allege when the Notice was distributed, but states that it became aware of the Notice in or around June 2007. *Id.* at ¶ 13. A copy of the Notice was affixed to the complaint and therefore "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Because of its centrality to the case, the pertinent text of the Notice – styled "Notice Regarding PSI Merchandise Bags and That's a Wrap Headwear" – is set out below:

> It has come to our attention recently that numerous dealers have been ordering dealer-customized merchandise bags from Packaging Supplies, Inc. (PSI), in Scottsdale, AZ. Dealers are reminded that all merchandise bags bearing Harley-Davidson's name and/or logo must be obtained through General Merchandise. PSI has received a cease and desist notice requiring them to stop providing these bags.
>
> We have also learned that many dealers are ordering dealer-customized head wraps from That's a Wrap in Madison, WI. As dealers are aware, goods of any nature bearing Harley-Davidson's trademarks, **including as they are incorporated in dealer business names and/or logos**, may be obtained only from sources approved in advance by Harley-Davidson. **This is true whether the goods are sold or given away as a promotion**. That's a wrap has also received a cease and desist letter advising them that dealers do not have the right to authorize the application of our trademarks to That's A Wrap's products.
>
> Harley-Davidson invests considerable resources in exercising quality control measures imposed on it under trademark law. If we fail to exercise these controls, we run the risk of losing our trademark rights. Dealers are asked to respect those rights and assist Harley-Davidson in protecting its most valuable assets for our mutual benefit.

Compl., Ex. A (emphasis in original).

PSI alleges that the letter mandates that the "dealers's (sic) merchandise bags 'must be obtained through [Harley-Davidson.]'" *Id.* at ¶ 14. PSI further alleges that, contrary to the assertion in the Notice, PSI never received a cease and desist notice and that Harley-Davidson had not had contact with PSI for several years. After the Notice was circulated, PSI began losing substantial sums of money, experiencing a more than $100,000 decline in revenues from 2006 to 2007. The dealers, many of whom liked PSI bags for their low cost and high quality, "feared repercussions from [Harley-Davidson] if they continued to do business with PSI." *Id.* at ¶¶ 15-17.

PSI alleges that "as a direct and proximate result" of the "improper and inaccurate" Notice, PSI has "suffered substantial financial damage." *Id.* at 18. In addition, Harley-Davidson contacted certain dealers to ask them if they bought from PSI. Harley-Davidson informed those dealers "that PSI was not going to take any more orders, or will not be shipping any more current orders to [Harley-Davidson] dealers." *Id.* at ¶ 27. Those statements were false, according to PSI, and intended to interfere with the relationship between PSI and its dealer-customers.

PSI's complaint comprises three counts. Counts I and II are, respectively, state law claims for (i) tortious interference with business relationships and for (ii) tortious interference with prospective business advantage. Count III alleges an illegal tying arrangement in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).[2]

## II.    Legal standard on motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first

---

[2] Tying claims typically are brought under Section 3 of the Clayton Act (15 U.S.C. § 14), whose language explicitly deals with tying, but also may be brought under Section 1 of the Sharman Act. *Will v. Comprehensive Accounting Corp.*, 776 F.3d 665, 669 (7th Cir. 1985).

3

must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

### III.   Analysis

#### A.   State Law Tortious Interference Claims (Counts I and II)

At least for purposes of the motion to dismiss, both PSI and Harley-Davidson assume that Illinois law will govern with respect to PSI's claims for tortious interference with business relationships and for tortious interference with prospective business advantage. Harley-Davidson makes two principal arguments with respect to PSI's state law claims. Harley-Davidson alleges that PSI's complaint is deficient as a matter of law because (i) the complaint fails to allege *improper and unjustified* interference as required under Illinois law and (ii) PSI "pleaded itself out of court" by establishing Harley-Davidson's privilege defenses. In executing these arguments, Harley-Davidson actually makes what merges into a single argument: that, by basing its tortious interference claims on the Notice, PSI has not alleged that any alleged

4

"interference" was "improper" because Harley-Davidson merely was making others aware of its trademark rights.

Harley-Davidson cites several district court cases from this circuit in support of the proposition that an intellectual property rights holder has the right to defend itself against infringement and to warn purchasers that they, too, might be liable. See, *e.g.*, *Am. Broadcasting Co. v. Maljack Productions,, Inc.*, 34 F. Supp. 2d 665, 675-76 (N.D. Ill. 1998). PSI responds that the privilege cited by Defendants is not without limits. See, *e,g.*, *HPI Health Care Svcs, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 (Ill. 1989) (unjustified and malicious exception to a privilege in an interference with contract action).

The Court need not weigh the extent to which Plaintiff has pleaded itself out of Court, however, because PSI's complaint comprises more than the Notice. A fair reading of PSI's complaint includes allegations that, regardless of the Notice, state a claim for relief – one to which Harley-Davidson's privilege arguments do not apply. First, PSI does not allege that any or all of the bags it designed for Harley-Davidson dealers contained trademarked content.[3] See Compl. ¶ 7. Second, Plaintiff alleges that, in addition to the Notice, Harley-Davidson contacted certain dealers, asked if those dealers purchased bags through PSI, and (if they answered in the affirmative) told those dealers that PSI would not be fulfilling their orders – apparently regardless of whether or not the bags contained trademarked content. Compl. ¶ 27. In short, PSI has made allegations to which Harley-Davidson's arguments do not apply (at least given that no factual development has taken place). For that reason, the motion to dismiss with respect to PSI's state law claims is denied.

---

[3] Indeed, it is far from clear, for instance, that Harley-Davidson dealers sell only Harley-Davidson motorcycles, have "Harley-Davidson" in their names, or use Harley-Davidson logos. See, *e.g.*, Compl. ¶ 11 (describing the custom-printed bags as containing the *dealership*'s logo).

5

### B.     Illegal Tying Claim (Count III)

A "tying" agreement is an agreement in which "a seller conditions the sale of a product or service on the buyer's buying another product or service from or * * * by direction of the seller." *Sheridan v. Marathon Petroleum Co. LLC*, 530 F.3d 590, 592 (7th Cir. 2008) (explaining the "traditional antitrust concern" with such agreements).  The Supreme Court has explained that "the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or would have preferred to purchase elsewhere on different terms." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984) (examining the validity of an exclusive contract between a hospital and a firm of anesthesiologists).  Such coercion restrains "competition on the merits in the tied market" and violates the Sherman Act.  *Id.*

Of course, not every tie constitutes an antitrust violation.  To successfully bring a tying claim, the Seventh Circuit requires a plaintiff to prove four elements: (1) the tying arrangement is between two distinct products or services; (2) the defendant has sufficient economic power in the tying market to appreciably restrain free competition in the market for the tied product; (3) a not insubstantial amount of interstate commerce is affected; and (4) the alleged tying company must have at least some economic interest in the sales of the tied seller (whose products are favored by the tie-in).  *Reifert v. S. Cent. Wisc. MLS Corp.*, 450 F.3d. 312, 316-17 (7th Cir. 2006).

In support of its motion to dismiss, Harley-Davidson argues that PSI failed sufficiently to allege both (i) a tying arrangement and (ii) that Harley-Davidson will acquire market power in the *tied* market. See Def.'s Mem. at 6-10.  The crux of Harley-Davidson's first argument is that PSI pleaded itself out of court by attaching the Notice to its complaint.  Focusing on the plain language of the Notice, Harley-Davidson argues that "the Notice not only fails to support, but

6

expressly contradicts, any notion that Harley-Davidson tied the sale of motorcycles to its dealers' purchase of merchandise bags." Def.'s Mem. at 6. PSI responds that the first paragraph of the complaint specifically alleges a tie between sales of Harley-Davidson motorcycles (the tying product) and sales of plastic merchandise bags (the tied product). PSI further asserts that dealers feared repercussions from Harley-Davidson if the dealers bought bags from PSI and that the dealers would have preferred to purchase PSI's bags. Pl.'s Mem. at 8; Compl. ¶¶ 1, 17. As part of PSI's state law claims, PSI asserts that Harley-Davidson contacted dealers and told them that PSI would not be taking any more orders from dealers for merchandise bags. Compl. ¶ 27.

As a general matter, an antitrust plaintiff need not present direct evidence of an agreement in order successfully to bring an antitrust suit. See, e,g., *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654-55 (price-fixing). And an express, written agreement is not a prerequisite of an illegal tie. For instance, in *Jefferson Parish* – the seminal Supreme Court tying case – the hospital-defendant was accused of tying surgical services to a particular firm of anesthesiologists. Although the hospital's contract with the anesthesiology firm at one time contained an exclusivity provision, the clause had been deleted by the time of the facts that gave rise to the case. *Jefferson Parish*, 466 U.S. at 5 (noting that despite the absence of an exclusivity provision "the hospital nevertheless continued to regard itself as committed to a closed anesthesiology department"). What matters for purposes of the sufficiency of PSI's complaint is that PSI allege that the dealers were coerced. The accompanying analysis, the Seventh Circuit teaches, may "require[] exceeding subtlety" in a tying case. *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 669 (7th Cir. 1985). "A tie within the meaning of antitrust law depends on showing that the buyer did not *want* to take both products from the same vendor." *Id.* (emphasis altered).

Of course, were Plaintiff's complaint predicated solely on the text of the Notice, the case would be a prime candidate for dismissal. The Court agrees that, on its face, the Notice appears to apply only to the use of Harley-Davidson's trademark. And courts have granted motions to dismiss in tying cases where the sole basis for the alleged tie was a deficient document. For example, in *RX Sys., Inc. v. Med. Tech. Sys., Inc.*, the plaintiff's allegations were based on a warranty provision in which a 90-day warranty would be forfeited if purchasers of a machine altered those machines to accept unauthorized parts or accessories. See 1995 WL 577659, at * 5 (N.D. Ill. Sept. 29, 1995). Critically, although the document was found insufficient to establish a tie, the plaintiff in that case failed to allege a source of coercion that was extrinsic to the warranty. See *id.* at *6 (explaining that a threat of lawsuits are not ordinarily a basis for antitrust liability unless the threat is a sham). See also *Sheridan v. Marathon Petroleum Co. LLC*, 2007 WL 2900556, at *6 (N.D. Ill. Sept. 28, 2007) ("Plaintiffs do not allege implicit coercion by Defendants to force lessee-dealers to use particular credit card processing services."), aff'd, 530 F.3d 590 (7th Cir. 2008). PSI's complaint, by contrast, alleges that many of Harley-Davidson's dealers would have preferred to buy bags from PSI but "feared repercussions * * * if they continued to do business with PSI." Compl. ¶ 17. And while a plaintiff at the pleading stage must allege plausible facts, it need not marshal all of its evidence. *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) ("[T]he plaintiff receives the benefit of imagination [at the pleading stage], so long as the hypotheses are consistent with the complaint"). At least at this early stage of the litigation, Plaintiff sufficiently has alleged the existence of a tie. Whether PSI can do so at the summary judgment phase is, of course, a separate question.

Defendant's second argument – that PSI failed to allege that Harley-Davidson will acquire market power in the tied market – fails as well. The parties' dispute on this point centers on whether acquisition of market power in the market for the tied product is an element of a tying claim. Harley-Davidson, citing *Carl Sandburg Village Condo. Ass'n v. First Condo. Dev. Co.* (758 F.2d 203, 210 (7th Cir. 1985)), argues that market power in the tied good is an element of a tying claim. Def.'s Mem. at 9. PSI points to *Reifert v. S. Cent. Wisc. MLS Corp.*, a more recent Seventh Circuit case whose tying framework is discussed above, to argue that PSI need only present allegations that the tying seller has sufficient economic power in the *tying* market to appreciably restrain free competition in the market for the tied product. Pl.'s Mem. at 10; see also *Reifert*, 450 F.3d at 316-17. The Court concludes that PSI's allegations suffice under either formulation.

Because not all ties constitute antitrust violations,[4] both parties agree that there must be some effect on the tied product market. Yet, the Seventh Circuit has not spoken with one voice as to what that requisite effect must be. In *Carl Sandburg*, the Seventh Circuit required a showing of substantial danger that the seller will acquire market power over the tied product. 758 F.2d at 210. More recently, in *Reifert*, the Seventh Circuit stated that the requisite effect on the tied market is appreciable restraint on free competition.[5] Either formulation can be viewed as

---

[4] For example, tying sales of right shoes to left shoes generally cannot be said to reduce consumer welfare or restrain trade. See, e.g., HERBERT HOVENKAMP, FEDERAL ANTITRUST POLICY: THE LAW OF COMPETITION AND ITS PRACTICE § 10.2 at 399 (West Publishing Co. 2005) (describing the role of judicial tests as devices for producing "an inference that a particular tying arrangement injures consumers as a group"); see also *Jefferson Parish*, 466 U.S. at 25 (observing that "there is nothing inherently anticompetitive about packaged sales").

[5] The tying formulation in *Reifert* might be viewed as retrenching from the earlier formulation in *Carl Sandburg*, which some commentators have questioned. See HOVENKAMP § 10.4a at 412 & nn.14-16 (concluding that requiring proof of market power in the tied market "seems to be a castoff of [a] generally discredited" economic theory of tying harm). But see *Sheridan*, 450 F.3d at 592 ("The traditional antitrust concern with [tying] is that * * * the result [of the tie] will be a second monopoly"); *A.O. Smith*

9

a corollary to the Supreme Court's holding in *Jefferson Parish* that "forcing," or coercion, is an essential characteristic of a tying claim. 466 U.S. at 12. Where "forcing" is present "competition on the merits in the market for the *tied* item is restrained." *Id.* (emphasis added). Courts will "condemn[] tying arrangements when the seller has some special ability * * * to force a purchaser to do something that that he would not do in a competitive market." *Id.* at 13-14.

To understand why any differences in the parties' formulations do not matter – for present purposes, at least – one need only understand what "market power" means. Market power is the "power to raise prices significantly above the competitive level without losing all of one's business." *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 678 F.2d 742, 745 (7th Cir. 1982); see also *Sheridan*, 530 F.3d at 594 (market power is "significant unilateral power over the market price"); *Fishman v. Estate of Wirtz*, 807 F.2d 520, 568 (7th Cir. 1986) (Easterbrook, J., dissenting in part) ("Market power means the ability to injure consumers by curtailing output and raising price."). One thus can see why the focus in tying cases generally falls on the market for the tying product:[6] it is only by dint of the market power over the tying product that a seller could have any chance of restraining free competition in the tied product market (*such as* by unilaterally raising the price for the tied good above marginal-cost pricing). If the seller does not have market power over the tying product, consumers may readily substitute away from the seller's goods, ultimately returning prices of the tying product to a competitive level. *Cf. Sheridan*, 530 F.3d at 594. By contrast, where a seller has market power over the tying product, other sellers "cannot take up enough of the slack" (*id.*) and return prices to competitive levels.

---

*Corp. v. Lewis, Overbeck & Furman*, 979 F.2d 546, 549 (7th Cir. 1992) (per *Carl Sandburg*, substantial danger of acquisition of market power over the tied product must be proved in a tying case).

[6] See *Illinois Tool Works Inc. v. Independent Ink*, 547 U.S. 28 (2006) (plaintiff must demonstrate market power over the tying product).

10

Yet, the allegations of the complaint combined with the definition of market power show that any distinctions between PSI's formulation and Harley-Davidson's formulation of the elements of a tying claim do not matter. The distinctions, as applied to this case, do not matter because the restraint on free competition in the market for the tied product that PSI alleges (the *Reifert* formulation of the required tied-market effect) is that buyers of plastic merchandise bags are forced to pay above-market prices (the *Carl Sandburg* formulation of the required tied-market effect). In other words, reading the allegations in PSI's complaint (see Compl. ¶¶ 1, 17; *cf. id.* at ¶ 27) in the light of the definition of market power shows that PSI has alleged precisely that which Harley-Davidson argues PSI has omitted.[7] See also *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 826 F.2d 712, 720 n.7 (7th Cir. 1987) (the "best way" to show market power "is to establish directly that the price of the tied package is higher than the price of the components sold in competitive markets").

\* \* \* \* \*

It may be that Harley-Davidson merely was protecting its intellectual property rights; if that is so, this case might easily be resolved at the summary judgment phase. "[I]t is well-established in this circuit that a trademark holder has the right to defend himself against infringement by sending trademark policing letters to alleged infringers." *Thermos Co. v. Igloo Products Corp.*, 1995 WL 745832, at *5 (N.D. Ill. Dec. 13, 1995) (internal quotation marks omitted) (listing cases). Yet, because it is not proper to examine the merits of the case on a motion to dismiss, the Court denies Defendant's motion [9].

---

[7] Defendant also argues that Plaintiff has failed to allege what the "tied market" is. Def.'s Mem. at 9. It is true that "any inquiry into the validity of a tying arrangement must focus on the market or markets in which the two products are sold." *Jefferson Parish*, 466 U.S. at 18. However, Harley-Davidson has presented no authority for the proposition that Plaintiff's *complaint* must define the market. Part of the confusion on the matter, and accompanying lack of precision in Plaintiff's complaint, seemingly stems from the fact that Plaintiff does not know whether Harley-Davidson makes customized merchandise bags or only non-customized merchandise bags.

11

## III. Conclusion

For the reasons stated above, Defendant's motion to dismiss [9] is respectfully denied.

Dated: March 30, 2009

Robert M. Dow, Jr.
United States District Judge