| | | |
|---|---|---|
| PACKAGING SUPPLIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARLEY-DAVIDSON, INC., and HARLEY- | ) | |
| DAVIDSON MOTOR COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | Case No.:  08-cv-400 |
| | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| HARLEY-DAVISON, INC.; HARLEY- | ) | |
| DAVIDSON MOTOR COMPANY, INC.; and | ) | |
| H-D MICHIGAN, LLC, | ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PACKAGING SUPPLIES, INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are two unopposed motions for summary judgment filed by the Harley-

Davidson parties.  Defendants move for summary judgment on all of the counts of Plaintiff's

complaint [71].  Counterclaim Plaintiffs move for partial summary judgment on Counts I, II, V,

and VII of their counterclaim (the counts that allege trademark infringement and unfair

competition) [73].  For the following reasons, both of the pending motions [71, 73] are granted.

**I.      Background**

Plaintiff and Counterclaim Defendant Packaging Supplies, Inc. ("PSI") is an Arizona

corporation with its principal place of business in Scottsdale, Arizona.    Defendant and

Counterclaim Plaintiff Harley-Davidson, Inc. is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. Defendant and Counterclaim Plaintiff Harley-Davidson Motor Company, Inc. is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin, and is responsible for the sale of Harley-Davidson motorcycles, parts and accessories, and general merchandise to Harley-Davidson dealers. Counterclaim Plaintiff H-D Michigan, LLC is a Michigan corporation with its principal place of business in Ann Arbor, Michigan. H-D Michigan is the owner of the Harley-Davidson trademark rights asserted in this action. Harley-Davidson, Inc. is the ultimate parent corporation of its subsidiaries, H-D Michigan, LLC and Harley-Davidson Motor Company, Inc. Collectively, the Court will refer to Defendants and Counterclaim Plaintiffs as "Harley-Davidson."[1]

Plaintiff commenced this action on January 17, 2008. On March 30, 2009, the Court denied Harley-Davidson's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [32]. On April 14, 2009, Harley-Davidson answered Plaintiff's complaint and asserted affirmative defenses and counterclaims [35]. The parties conducted full fact discovery. On August 30, 2010, Harley-Davidson filed its motions for summary judgment along with a consolidated statement of undisputed facts pursuant to Local Rule 56.1. After receiving input from the parties regarding their preferred briefing schedule, the Court set a deadline of October 13, 2010 for Plaintiff's responses and November 3, 2010 for Harley-Davidson's replies [79]. As of the date of this order, Plaintiff has filed no papers whatsoever in response to Harley-Davidson's motions. Nor has Plaintiff requested an extension or made any filing at all in this

---

[1] The Court has both federal question and diversity jurisdiction over this lawsuit. The Court has federal question jurisdiction over PSI's antitrust claim pursuant to 15 U.S.C. §15(a) and 28 U.S.C. § 1331. The Court has jurisdiction over Harley-Davidson's Counterclaims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338(a) and (b). Further, because the parties are citizens of different states and the matter in controversy exceeds $75,000, the Court also has jurisdiction over this matter under 28 U.S.C. § 1332.

case. Because Plaintiff has failed to controvert Harley-Davidson's statement of facts [75], the Court deems those facts admitted so far as they are supported by admissible record evidence.[2] See Local Rule ("L.R.") 56.1(b)(3)(C); *Bell, Boyd, & Lloyd v. Tapy*, 896 F.2d 1101, 1102 (7th Cir. 1990).

### A.     Harley-Davidson's Trademarks

Harley-Davidson began selling motorcycles in the United States in 1903 and has since become an iconic brand that is recognized worldwide. H-D Michigan, LLC is the owner of a number of Harley-Davidson's federal trademarks and service marks, including the word mark "HARLEY-DAVIDSON," the "Bar & Shield" logo and the "MotorClothes" logo.



| Bar & Shield logo | MotorClothes logo |
| --- | --- |

---

[2] L.R. 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583–85 (N.D. Ill. 2000). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See, *e.g.*, *Malec*, 191 F.R.D. at 583. L.R. 56.1(b)(3)(C) provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)).

The registrations for these marks remain in full force and effect and the United States Patent and Trademark Office ("USPTO") has accepted and acknowledged Section 15 incontestability affidavits for all of the relevant registrations. The Harley-Davidson name mark and logos are collectively referred to herein as the "H-D Marks."

The H-D Marks are widely recognized as among the world's most famous trademarks. By virtue of Harley-Davidson's extensive use and promotion of the H-D Marks, consumers have come to recognize Harley-Davidson as the source or sponsor of a wide range of quality products marketed under the H-D Marks. Harley-Davidson has invested substantial time, effort and money in advertising and promoting the H-D Marks for decades, exposing the Marks to millions of people. Between 2004 and 2008 alone, Harley-Davidson spent more than $344 million on advertising, promoting, and marketing products and services under the H-D Marks, with the majority of that advertising taking place in the United States. Between 2004 and 2008 alone, Harley-Davidson sold nearly 1.25 million motorcycles in the U.S. generating over $16.3 billion in sales. During that same period, Harley-Davidson sold more than $4.1 billion of motorcycle parts and accessories worldwide and more than $1.3 billion of apparel and collectibles worldwide, the majority of which sales took place in the United States. In addition, for the past five years, Harley-Davidson has received substantial royalty revenues from licensing its trademarks, with the majority of these revenues coming from the United States.

The federal trademark registrations for the H-D Marks cover use of the Marks on a wide variety of Harley-Davidson products including, for example, motorcycle accessories, helmets, jackets, hats, t-shirts and dozens of other items in addition to motorcycles. Additionally, Harley-Davidson has used the H-D Marks on merchandise bags supplied to its dealers since at least 1987, and has sold more than forty million merchandise bags bearing H-D Marks to its dealers

since then.  Harley-Davidson markets and sells its merchandise bags bearing the H-D Marks to its dealers through its MotorClothes merchandise catalogs.

### B.    PSI's Use of H-D Marks

PSI's business is plastic merchandise bags.  These bags are not sold in stores; rather they are used by consumers for carrying away their purchases after transactions with PSI's clients. The bags are custom printed, and since 1964 PSI has been selling them to retailers, manufacturers and franchise operators throughout the United States.  Beginning around 2002, numerous Harley-Davidson motorcycle dealerships (125 out of 679) were among PSI's clients. These dealerships are independently owned and licensed, and the bags that PSI made were customized for each dealer-client.

PSI used one or more of the H-D Marks on every (or nearly every) merchandise bag sold to a Harley-Davidson dealer.  PSI admits that its supply of merchandise bags to Harley-Davidson dealers depends on its use of H-D Marks.  PSI has never been licensed by Harley-Davidson to use the H-D Marks and never sought Harley-Davidson's permission to use the H-D Marks.[3]

PSI has sold its bags to Harley-Davidson dealers in competition with Harley-Davidson and has displaced it as a supplier of merchandise bags at certain dealerships.  PSI also used the H-D Marks in promotional materials that PSI used to promote its business.  Starting in approximately 2004, PSI promoted its business by disseminating to prospective customers fliers that depicted merchandise bags produced for Harley-Davidson dealers and incorporating H-D Marks.  During that period, PSI sent approximately 1,000 fliers each year to Harley-Davidson

---

[3] PSI has claimed that it assumed that it had the right to use H-D Marks because certain unnamed Harley-Davidson dealers at some point prior to 2006 told PSI that it could reproduce the H-D Marks on goods not offered for resale.  PSI never verified the accuracy of its assumption that it could use the H-D Marks on its merchandise bags. PSI has never seen a Harley-Davidson Dealer Contract and has no knowledge of the terms under which Harley-Davidson dealers could use H-D Marks.

and other motor sports dealers.  For those Harley-Davidson dealers that expressed an interest in PSI's merchandise bags, PSI routinely sent sample packs of bags produced for other Harley-Davidson dealers that incorporated H-D Marks.  None of the PSI promotional materials makes any reference to whether PSI was authorized to use the H-D Marks.

Sometime in 2005, PSI received a telephone call from a former Harley-Davidson "trademark enforcement" employee concerning its merchandise bags.  Following that call, PSI wrote to the Harley-Davidson trademark enforcement employee on November 2, 2005, regarding its merchandise bag program, explaining, *inter alia*, that PSI "would never intentionally violate a federal trademark."

In 2007, Harley-Davidson received an inquiry from a Harley-Davidson dealer regarding whether PSI was an authorized supplier that was permitted to use the H-D Marks on its merchandise bags.  In June 2007, Harley-Davidson posted a notice on its dealer intranet advising Harley-Davidson dealers that PSI was not authorized to use H-D Marks on merchandise bags, that PSI had received a "cease and desist notice," and that "all merchandise bags bearing Harley-Davidson's name and/or logo must be obtained through" Harley-Davidson.  See Ex. A to Cmplt., incorporating full text of Notice).

PSI received a copy of the Harley-Davidson Notice in approximately June 2007, and became aware that Harley-Davidson objected to PSI's use of H-D Marks on merchandise bags. Since that time, PSI received additional notice of Harley-Davidson's position regarding PSI's infringement of its trademarks through the counterclaims in this litigation, and otherwise. However, following receipt of the Harley-Davidson June 2007 Notice, PSI did not change its business operations concerning the sale to Harley-Davidson dealers of merchandise bags bearing H-D Marks.  PSI also continued to represent to Harley-Davidson dealers that PSI did not require

a license to use the H-D Marks because merchandise bags were a supply item, and thus, not resold. See, *e.g.*, Ex. 18 to Cohen Dep. (Email from Mr. Cohen to dealer dated May 9, 2008, stating: "these items are not being sold and therefore do not require that [PSI] be licensed"); Ex. 5 to Cohen Dep. at PSI17728 (Cohen letter to dealer dated Nov. 5, 2007, stating: "If you further check your agreement you will see that supply items do not need to be licensed. Bags are a supply item.").

In fact, the contracts between Harley-Davidson and its dealers contained no such provision. Harley-Davidson enters into Motorcycle Dealer Contracts with each of its authorized dealers. The Dealer Contract sets out the terms under which a dealer may use the H-D Marks and includes specific terms governing when dealers may purchase products from third parties when those products incorporate H-D Marks.[4] The Contract provides that "dealers are not permitted to purchase goods for distribution products bearing H-D Marks from any source other than Harley-Davidson or its authorized licensees without prior approval of Harley-Davidson." Ex. 2, to Merten Decl., Sample Motorcycle Dealer Contract, at § K(3); see also *id.* (dealers are not permitted to have products created on its behalf incorporating H-D Marks for distribution to customers). There is no term in the Dealer Contract that allows third parties to use H-D marks if the products on which the Marks were to be used are not intended for resale. Further, there is no term in the Dealer Contract that requires dealers to purchase merchandise bags from Harley-Davidson in order to receive Harley- Davidson motorcycles.

## C.    Dealer and End-User Confusion

Harley-Davidson has submitted evidence that establishes that both Harley-Davidson dealers and their customers were or would be confused by Plaintiff's use of the Marks.

---

[4] The Dealer Contracts provide that "dealers have no rights to use H-D Marks except as specifically provided in Dealer Contract." Ex. 2, to Merten Decl., Sample Motorcycle Dealer Contract, Part 1(C).

First, Harley-Davison has introduced evidence that shows that PSI's unauthorized use of H-D Marks on its bags and in its promotional materials confused at least seven of their dealers regarding whether PSI was authorized to supply merchandise bags bearing H-D Marks. A number of dealers testified that they either assumed that Plaintiff was so authorized or that Plaintiff told them that they could use the Marks.

Further, PSI understood that Harley-Davidson dealers used the merchandise bags produced by PSI to package merchandise such as genuine Harley-Davidson accessories and MotorClothes apparel purchased by consumers in their dealerships. PSI intended for dealership customers to use its merchandise bags bearing H-D Marks over and over again following their purchase of merchandise. See, *e.g.* A Ex. 20 to Topczewski Dep. (fax from Mr. Topczewski to dealer dated Aug. 8, 2007, stating: "We tried to come up with a size we thought would be very good for people to use again and again. Something they can use to go shopping or even for the day at the beach.").

## II.     Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party

seeking summary judgment has the burden of establishing the lack of any genuine issue of

material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is

proper against "a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence

in support of the [non-movant's] position will be insufficient; there must be evidence on which

the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III.     Analysis

### A.     Harley-Davidson's Motion for Summary Judgment on their Counterclaims for Trademark Infringement and Unfair Competition

Counterclaim Plaintiffs move for partial summary judgment as to liability on their

counterclaims for trademark infringement under Section 32(1) of the Lanham Act (15 U.S.C. §

1114(1)) (Count I); false designation of origin (unfair competition) under Section 43(a)(1)(A) of

the Lanham Act (15 U.S.C. § 1125(a)(1)(A)) (Count II); common law unfair competition under

Illinois state law (Count V); and violation of the Illinois Uniform Deceptive Trade Practices Act

(815 ILCS 510/1 *et seq.*) (Count VII). These counterclaims are specifically directed to PSI's

unauthorized (and continuing) use of the H-D Marks.

Each of the four trademark-related counterclaims at issue in this motion involves the

same elements and proofs. See *Spex, Inc. v. The Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D.

Ill. 1994) (citing *Gimix, Inc. v. JS & A Group, Inc.,* 699 F.2d 901, 908 (7th Cir. 1983) (holding

that "[c]laims for unfair competition and deceptive business practices [involving trade names]

brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act" and noting that "Illinois courts look to federal case law and apply the same analysis to state infringement claims"); see also *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (same). To establish liability on the counterclaims, Harley-Davidson must demonstrate that: (1) it has protectable rights in the asserted trademarks; and (2) PSI's use of these marks is likely to cause confusion. See *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001). Proof of these same two elements is required for both federal claims in this case: trademark infringement, 15 U.S.C. § 1114, and unfair competition, 15 U.S.C. § 1125(a). See *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 n.8 (7th Cir. 2001).

Because there is no genuine issue of material fact with respect to either element, the Court grants summary judgment in favor of Harley-Davidson as to PSI's trademark violations. First, Harley-Davidson's protectable interest in the H-D marks is beyond dispute and is in fact undisputed. As discussed above, Harley-Davidson owns several Principal Register federal trademark registrations covering its famous H-D Marks in connection with a wide variety of goods. As the owner of the federal registrations, Harley-Davidson is entitled to several statutory presumptions under the Lanham Act federal trademark statute, including that its certificate of registration constitutes "prima facie evidence of the validity of the registered mark[s] * * *, of the owner's ownership of the mark[s], and of the owner's exclusive right to use the registered mark[s] in commerce on or in connection with the goods * * * specified in the certificate * * *." 15 U.S.C. § 1057(b). Moreover, Harley-Davidson's rights in the H-D Marks are deemed incontestable by the U.S. Patent & Trademark Office. As a result, the H-D Marks are entitled to the highest degree of protection afforded under the Lanham Act. See 15 U.S.C. § 1065; *Union*

*Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 371 (7th Cir. 1976).   These trademark

registrations and the statutory rights conferred thereby are effective not only against

unauthorized uses of the Marks in connection with identical goods, but also against unauthorized

uses in connection with "related" goods.  See *CAE, Inc.*, 267 F.3d at 679.

In addition to its federal registrations covering related goods, Harley-Davidson has

established that it owns common law trademark rights covering use of the H-D Marks on

merchandise bags—the very goods at issue in this litigation—by virtue of its widespread use of

the H-D Marks on its merchandise bags since at least 1987.   Harley-Davidson offers these

merchandise bags bearing the H-D Marks through its dealer catalogue, and since 2004, has sold

more than forty million merchandise bags bearing the H-D Marks to its dealers.   Harley-

Davidson's common law trademark rights are also actionable under the Lanham Act, 15 U.S.C.

1125(a).  See, *e.g. Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 435

(7th Cir. 1999).

Moving on to the second element of Harley-Davidson's causes of action, there is no

genuine issue of material fact that PSI's use of the HD-Marks is likely to cause confusion.

Courts in the Seventh Circuit analyze the likelihood of confusion under a seven-factor test: "(1)

similarity between the marks in appearance and suggestion; (2) similarity of the products; (3)

area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5)

strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off"

his product as that of another."  *Packman*, 267 F.3d at 643.  No single factor is dispositive, and

courts may assign varying weights to each of the factors depending on the facts presented,

although, in many cases, the similarity of the marks, the defendant's intent, and actual confusion

are particularly important. *Id.*  No matter what weight the Court assigns the various factors,

Harley-Davidson has conclusively established a likelihood of confusion.

With regard to the first factor, this is not a case involving confusingly similar marks. Rather, there is no dispute that PSI has used and is using the actual H-D Marks as part of the artwork on all merchandise bags that it produces for Harley-Davidson dealers.

Similarity of the parties' products is the second factor in the likelihood of confusion test. See *CAE,* 267 F.3d at 678-79. This factor does not require identical products or direct competition, only a showing that the parties' goods are "sufficiently related to create an inference in consumer's minds that the products came from the same source." *Id.* at 679 (quoting *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1089 (7th Cir. 1988)). Harley-Davidson's federal trademark registrations cover clothing, jewelry, helmets, and many other goods that its independent dealers offer to consumers. Harley-Davidson's dealers, in turn, place these Harley-Davidson branded goods in merchandise bags provided to their customers at the check-out counter. PSI's accused merchandise bags are sufficiently related to and used in conjunction with goods in which Harley-Davidson owns exclusive trademark rights by virtue of its federal trademark registrations. Moreover, Harley-Davidson owns common law trademark rights in *identical* goods; namely, merchandise bags bearing the H-D Marks. Consequently, this factor is easily satisfied because both Harley-Davidson and PSI sell identical products—merchandise bags—to independent Harley-Davidson dealers who distribute the bags to consumers purchasing branded merchandise.

Regarding the third factor, PSI and Harley-Davidson sell their merchandise bags in identical trade channels. PSI sells its accused merchandise bags to Harley-Davidson dealers, many of whom also purchased genuine merchandise bags directly from Harley-Davidson.

The fourth factor analyzes the degree of care likely to be exercised by customers of the

products at issue. See *CAE,* 267 F.3d at 682-83. There are a number of reasons why this factor weighs in favor of a strong likelihood of confusion. For one, the retail consumers who ultimately receive PSI's merchandise bags are provided those bags for free and therefore would not be in a position to exercise care in selecting the bags. These retail customers have no way of knowing whether those bags were produced by an authorized Harley-Davidson supplier, nor do potential customers encountering PSI's bags in the post-sale context. Harley-Davidson's reputation is therefore beyond its own control, in violation of the Lanham Act. *See* 15 USC § 1125(a)(1)(A); *CAE*, 267 F.3d at 683; *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986) ("[T]he trademark laws are designed not only to prevent consumer confusion but also to protect 'the synonymous right of a trademark owner to control his product's reputation.'").

The fifth factor—the strength of the marks—clearly favors Harley-Davidson. See *CAE*, 267 F.3d at 684. The H-D Marks are among the world's most famous trademarks. Harley-Davidson has spent hundreds of millions of dollars on advertising, promoting, and marketing products and services under the Marks and has sold millions of motorcycles bearing its Marks. Where, as here, the case involves strong and famous marks, "the law imposes a heightened obligation on others to give [the H-D Marks] a wide berth." *Sara Lee Corp. v. American Leather Products, Inc.*, 1998 WL 433764, at *10 (N.D. Ill. July 29, 1998) (citing *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 276 (7th Cir. 1976)).

With regard to the sixth factor—evidence of actual confusion—Harley-Davidson has provided declarations from several of its dealers that explain that they were confused by PSI's unauthorized use of the H-D Marks. These dealers stated that PSI's use of the H-D Marks on flyers, its distribution of sample bags produced for other dealers bearing the H-D Marks, and its

misrepresentations regarding PSI's authority to supply dealers with such bags, caused them to believe PSI was an authorized supplier.

Lastly, courts in this Circuit examine the accused infringer's intent to "palm off" its products. See *CAE*, 267 F.3d at 686. Here, the record is replete with facts that suggest that PSI deliberately and intentionally used the H-D Marks and acted in a manner intended to confuse Harley-Davidson dealers as to PSI's rights to use those marks. The Court need only provide a few illustrative examples of facts that suggest this intent. For one, PSI's use of the H-D Marks was not occasional or episodic: every (or nearly every) bag that PSI has sold to a Harley-Davidson dealer bears at least one of the H-D Marks. Indeed, PSI continued to exploit the H-D Marks for its benefit despite knowledge that Harley-Davidson considered PSI's use unauthorized. When questioned by dealers as to PSI's authorization to use the H-D Marks following the June 2007 Notice, PSI continued to represent to Harley-Davidson dealers that PSI did not require a license to use the H-D Marks, without obtaining a legal opinion and without any knowledge of the Harley-Davidson dealer contracts, and despite the unequivocal statements from Harley-Davidson to the contrary.

There is no genuine issue of material fact as to the validity of the H-D Marks and the likelihood of confusion caused by PSI's activities. Accordingly, the Court enters partial summary judgment favor of Harley-Davidson on liability for its trademark-based counterclaims (Counts I, II, V, and VII).

### B. Harley-Davidson's Motion for Summary Judgment on Plaintiff's Antitrust and Tort Claims

The Court discussed PSI's claims in detail in its prior order denying Harley-Davidson's motion to dismiss, see *Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, 2009 WL 855798 (N.D. Ill. March 30, 2009), and refers the reader to that order for a more detailed explanation of

Plaintiff's claims. Briefly, counts I and II of the complaint are, respectively, state law claims for (i) tortious interference with business relationships and for (ii) tortious interference with prospective business advantage. Count III alleges an illegal tying arrangement in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

The Court concluded its prior order by noting that "[i]t may be that Harley-Davidson merely was protecting its intellectual property rights; if that is so, this case might easily be resolved at the summary judgment phase." 2009 WL 855798, at *7 (citing *Thermos Co. v. Igloo Products Corp.,* 1995 WL 745832, at *5 (N.D. Ill. Dec. 13, 1995) ("[I]t is well-established in this circuit that a trademark holder has the right to defend himself against infringement by sending trademark policing letters to alleged infringers.")). The Court's speculation has been borne out by the record on summary judgment: because PSI has introduced <u>no</u> admissible evidence that Harley-Davidson "tied" the sale of its motorcycles to its dealers' purchase of merchandise bags, or otherwise engaged in improper or unprivileged interference with PSI's business relationships, summary judgment against PSI and in favor of Harley-Davidson on PSI's complaint is warranted.

First, Plaintiff's tort claims generally involve allegations that Harley-Davidson directed its dealers to cease doing business with PSI. At the motion to dismiss stage, Harley-Davidson had argued that, as an intellectual property rights holder, it was entitled to defend itself against infringement by third parties such as PSI and to warn purchasers that they, too, might be liable. See, *e.g., Thermos Co.,* 1995 WL 745832, at *5; *Am. Broadcasting Co. v. Maljack Productions, Inc.,* 34 F.Supp.2d 665, 675-76 (N.D. Ill. 1998). The Court examined the Notice and agreed with Harley-Davidson that "on its face, the Notice appears to apply only to the use of Harley-Davidson's trademark." 2009 WL 855798, at *5. The Court reasoned that "were Plaintiff's

15

complaint predicated solely on the text of the Notice, the case would be a prime candidate for dismissal." *Id.* However, the Court did not dismiss Plaintiff's tort claims because the complaint contained allegations that Harley Davidson interfered with PSI's business apart from the Notice that it sent in an effort to protect its trademarks. For instance, Plaintiff had alleged that, in addition to the Notice, Harley-Davidson contacted certain dealers, asked if those dealers purchased bags through PSI, and (if they answered in the affirmative) told those dealers that PSI would not be fulfilling their orders—apparently regardless of whether the bags contained trademarked content. (Here, the Court noted that PSI's complaint did not allege that any or all of the bags it designed for Harley-Davidson dealers contained trademarked content.)

Plaintiffs have introduced no evidence to substantiate any of their allegations. Instead, Defendants have established that all of the bags that PSI sold to Harley-Davidson dealers contained trademarked content. The only communication in the record (the Notice) evidences an attempt by Harley-Davidson to protect itself from PSI's unauthorized use of its trademarks—a privileged communication. Accordingly, the Court grants summary judgment in favor of Harley-Davidson and against Plaintiff on Plaintiff's tort claims. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (the "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

The tying claim alleges a tie between sales of Harley-Davidson motorcycles (the tying product) and sales of plastic merchandise bags (the tied product). To establish an unlawful tying claim, PSI must prove that Harley-Davidson: (1) imposed a tying arrangement between two distinct products (in this case motorcycles and merchandise bags); (2) possessed sufficient

economic power in the tying market to appreciably restrain competition in the tied product market; and (3) a not insubstantial amount of interstate commerce was affected. *Reifert v. S. Cent. Wisc. MLS Corp.*, 450 F.3d 312, 316-317 (7th Cir. 2006). Plaintiff's tying claim fails for a complete absence of evidence regarding the first two elements; however, the Court need only discuss the first.

PSI has introduced no evidence that suggests that Harley-Davidson conditioned the sale of motorcycles on its dealers' purchase of merchandise bags—an essential element of its antitrust claim. See *Sheridan v. Maraton Petroleum Co., LLC*, 530 F.3d 590, 592 (7th Cir. 2008) (conditioning required). "The joint sale of two products is a 'tie' only if the seller exploits its control of the tying product 'to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.'" *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 669 (7th Cir. 1985) (quoting *Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2 (1984)). Thus, "[t]o survive summary judgment, [PSI] must present admissible evidence, not mere speculation, that [Harley-Davidson] coerced its [dealers]" to purchase merchandise bags or suffer the loss of the motorcycle line. *Paladin Assoc., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1161 (9th Cir. 2003). Plaintiff has failed to meet this burden.

Indeed, the Court has examined the Notice and the relevant portions of the Harley-Davidson dealer contract and found no language in either document that requires dealers to purchase merchandise bags from Harley-Davidson, whether as a condition to receive motorcyle shipments or otherwise. There is no evidence in the record from any other source that suggests that Harley-Davidson coerced its dealers in any way or tied the purchase of the two products together. This failure of proof of "conditioning" or a "tie" compels dismissal of this claim. See,

*e.g.*, *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 722-24 (7th Cir. 1979).

## IV.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment on all of the counts of Plaintiff's complaint [71] is granted.  Counterclaim Plaintiffs' motion for partial summary judgment on Counts I, II, V, and VII of their counterclaim (the counts that allege trademark infringement and unfair competition) [73] also is granted.

Dated:  May 12, 2011                                   _____

                                                                            Robert M. Dow, Jr.
                                                                            United States District Judge