# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 400 | **DATE** | 11/4/2011 |
| **CASE TITLE** | Packaging Supplies, Inc. vs. Harley-Davidson, Inc. | | |

**DOCKET ENTRY TEXT**

Before the Court is a motion [89] filed by Plaintiff/Counter-Defendant Packaging Supplies, Inc. ("PSI") to vacate this Court's entry of summary judgment against it [83]. For the reasons explained below, PSI's motion is respectfully denied. The parties are given until 11/18/2011 to submit a joint status report advising the Court of (a) any further motions that the parties contemplate, (b) a proposed briefing schedule on such motions (if any), and (c) in the absence of further motions, their position(s) on what remains to be done in this litigation.

■[ For further details see text below.]   Docketing to mail notices.

# STATEMENT

## I.  Background

PSI instigated this suit when it filed its complaint on January 17, 2008 [1]. After PSI survived a motion to dismiss (see [32]), the Harley-Davidson parties ("Harley-Davidson") answered and filed a counterclaim.

On August 26, 2010, the Court held a status hearing and directed the parties to contact the Courtroom Deputy with an agreed briefing schedule for their dispositive motions [70]. Four days later, on August 30, 2010, Harley-Davidson filed two motions: one seeking summary judgment on all counts of PSI's complaint [71], and another seeking partial summary judgment on the issue of liability on Counts I, II, V, and VII of Harley-Davidson's counterclaim (the counts that alleged trademark infringement and unfair competition) [73]. Shortly thereafter, the Court entered the parties' agreed briefing schedule [79]. PSI's responses were due on 10/13/2010; Harley-Davidson's replies were due by 11/3/2010.

The October 13 deadline came and went without any filing from PSI. On 11/3/2010, the date set for its reply, Harley-Davidson filed a combined reply brief that pointed out that PSI had "filed no papers whatsoever in opposition to Harley-Davidson's motions; nor has it sought or received leave of Court to excuse its response date." ([80] at 2). Harley-Davidson urged the Court to deem admitted its consolidated Local Rule 56.1 statement of facts and decide its motions without a response from PSI. *Id.*

As of mid-May, the docket reflected not a single filing from PSI – no response to Harley-Davidson's motion for summary judgment, no motion for extension of time to file a brief, no motion seeking any other relief. By that time, Harley-Davidson's motions had been pending for approximately eight and one-half months, and

## STATEMENT

nearly six and one-half months had passed since the filing of Harley-Davidson's reply brief. So, on May 12, 2011, the Court issued an 18-page opinion in which it deemed admitted Harley-Davidson's statement of facts, analyzed its various arguments, and granted both of Harley-Davidson's motions for summary judgment [83].

PSI filed the instant motion on June 2, 2011 [89]. In it, PSI advises that following the filing of Harley-Davidson's summary judgment motions, the parties were beginning a second round of settlement discussions. PSI Mot. at ¶ 2. Counsel for PSI states that the "Court was advised of the parties' intentions, and though no official stay order was entered, the summary judgment was put 'on hold' during the negotiations." *Id.* at ¶ 3. Counsel for PSI has a "recollection * * * that he told the [Court's] Clerk that discussions were ongoing, and that [he] would report to the Court when the negotiations failed or were consummated." *Id.* According to PSI, after months of delays, the parties finally reached an agreement in principle "by early February, 2011." *Id.* at ¶ 5. However, certain details remained to be worked out. *Id.* & Ex. A thereto. By May 4, 2011, phone calls and communications between the parties left counsel for PSI with "the impression, if not actually expressed, that this was a 'done deal.'" *Id.* However, PSI admits (as it must) that the settlement agreement allegedly worked out between the parties was never executed. *Id.* at ¶¶ 6, 12. PSI contends that it had "meritorious defenses" to Harley-Davidson's motion for summary judgment, but did not present them because it believed that the lawsuit would settle.[FN 1] *Id.* at ¶ 8. PSI argues that the Court should vacate the entry of summary judgment to "accomplish justice," as "[t]he only obstacle for having a fully executed document reflecting the agreement was the result of [Harley-Davidson's] own delay." *Id.* at ¶ 12.

> [FN 1] The defense that PSI references is "waiver." Notably, not only did PSI fail to raise this defense in opposition to summary judgment, it failed ever to plead this affirmative defense, as it was required to do, in its answer to Harley-Davidson's counterclaims. See, *e.g. Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000); Fed. R. Civ. P. 8(c)(1).

Not surprisingly, Harley-Davidson takes a different view of the parties' course of settlement negotiations. Harley-Davidson agrees that both before and after it filed its motions for summary judgment, Harley-Davidson and PSI were engaged in settlement discussions. H-D Resp. [92] at 4-8. On October 1, 2010, PSI sought Harley-Davidson's agreement to extend the date set for its response to the motions, but Harley-Davidson refused to consent to an open-ended extension. *Id.* at 6. However, Harley-Davidson did agree to an extension through October 18, 2010 (the Court was never advised of this agreement). The parties continued to discuss settlement terms through the month of October.

On October 24, noting that PSI had not filed its response brief, counsel for Harley-Davidson wrote counsel for PSI to advise that PSI had missed the filing deadline and to continue to discuss settlement. On October 29, 2010, PSI again e-mailed counsel for PSI to remind him that PSI had missed its summary judgment deadline, writing: "We have never agreed to extend PSI's opposition to our motion for summary judgment beyond October 18. [* * *] We do not and will not agree to excuse PSI's missed deadline." H-D Resp. at 7 (quoting Ex. E to Declaration of James G. Kress).

In the months following the expiration of PSI's time for responding to Harley-Davidson's motions, the parties continued to negotiate. H-D Resp. at 8. However, Harley-Davidson made explicitly clear that all bets were off if the Court decided the pending motions. For example, on December 12, 2010, counsel for Harley-Davidson forwarded another draft proposal and emphasized that absent a fully executed agreement, Harley-Davidson had not agreed to put the summary judgment proceedings "on hold." Harley-Davidson wrote: "We will not take any action in the Court until we have received the signed documents * * * A deal is only effective upon signed papers. Thus, let's wrap this up ASAP." Ex. E to Kress Declaration. On February 4,

**STATEMENT**

2011, PSI's counsel asserted that he had received "signed documents" from his client, but did not tender those documents to Harley-Davidson. *Id.* at 8; Ex. F to Kress Declaration. Further, in his February 4 e-mail, counsel for PSI advised of a potential issue with the settlement agreement. One of the draft agreement's provisions required PSI to deliver the allegedly-infringing plates that PSI used to produce its bags. *Id.* However, PSI reported that those plates were in the possession of its vendors in China. Two days later, on February 9, 2011, counsel for Harley-Davidson responded that the issue of the disposition of allegedly-infringing plates could be dealt with in "some kind of side agreement."

By April 20, 2011, the issue of the Chinese-held plates was still open. Counsel for Harley-Davidson e-mailed counsel for PSI and advised that "[i]t is time to finalize this settlement and close out this litigation." *Id.* In the e-mail, counsel for Harley-Davidson wrote: "As we have discussed before, *if the Court were to rule before we finalized, all bets are off – perhaps for both sides – with respect to our agreement in principle*." *Id.* (emphasis added). Later that day, the parties continued to discuss the specific terms of the proposed side-letter that related to the plates.

On May 4, 2011, counsel for PSI wrote to counsel for Harley-Davidson, and advised that "I think Fred [of PSI] can live with your letter agreement, including the plate issue." *Id.* However, PSI never tendered a signed agreement or side letter, and Harley-Davidson never executed any documents. Again, the Court issued its ruling on May 12, 2011.

**II.   Legal Standard**

Because the Court's May 12, 2011 opinion did not dispose of this case in its entirety, the Court reviews PSI's motion to vacate under Federal Rule of Civil Procedure 54(b), which states in relevant part: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Accordingly, under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because such orders may be revised at any time before the Court enters a final judgment. See *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 870 (7th Cir. 2007) ("nonfinal orders are generally modifiable").

However, it is well established in this district and circuit that "'[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.'" *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)). In regard to the "manifest error" prong, the Seventh Circuit has explained that a motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); see also *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'"); *Bilek v. Am. Home Mortg. Serv.*, 2010 WL 3306912, at *1 (N.D. Ill. Aug. 19, 2010)**.** And with respect to the second prong, the court of appeals has explained that a motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to

**STATEMENT**

the Court." *Id.* Because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id.*

### III. Analysis

While the above discussion of the Rule 54(b) standard establishes that the Court has the authority to vacate its entry of summary judgment, PSI offers analogous case law or other persuasive justification for the extraordinary relief that it requests. As an initial matter, PSI characterizes its motion as one brought under Federal Rule of Civil Procedure 54(b) or 60(b)(6); however, PSI identifies no "manifest errors of law or fact" committed by the Court, and identifies no "newly discovered evidence" that was not available at the time that the Court decided the motions. *Bonaventura*, 458 F. Supp. 2d at 707.

Instead, PSI essentially argues that it was "lulled" into not responding to Harley-Davidson's motions by the seemingly promising course of the settlement negotiations between the parties. Even if PSI's argument were supported by the factual record (it is not), nothing that Harley-Davidson could have said would have relieved PSI from its responsibility to comply with the Court's scheduling order and responding to Harley-Davidson's motions for summary judgment in a timely manner – or, at a minimum, obtain some other timely relief such as a stay of briefing or an extension of time.

First, the Court has reviewed the e-mails and other evidence introduced by the parties and concludes that Harley-Davidson never agreed to place the summary judgment proceedings "on hold" while settlement talks progressed. To the contrary, Harley-Davidson consistently warned PSI that it would "not take any action in the Court until we have received the signed documents," Ex. E to Kress Declaration, and "if the Court were to rule before we finalized, all bets are off." Ex. F. to Kress Declaration. If PSI had any doubt about Harley-Davidson's position with regard to staying summary judgment, it need have only looked as far as Harley-Davidson's reply brief, filed on November 3, 2011, wherein Harley-Davidson argued that PSI's failure to respond to its motions was grounds for deeming Harley-Davidson's statement of facts admitted and ruling on the motions on that basis.

In any event, PSI has not explained how any private conversations that it may have had with Harley-Davidson could have excused PSI from its obligation to respond to the pending motions. The Court ordered PSI to file its papers in response to Harley-Davidson's motions by October 13, 2010 [79]. PSI never sought an extension to that briefing schedule. When a party fails to respond to a motion within the time allotted, the Court is empowered to rule on the merits of the motion without the benefit of the party's response. *Easley v. Kirmsee*, 382 F.3d 693, 699 (7th Cir. 2004) ("The trial judge was entitled to expect [the party] to comply with his clear and straightforward pretrial scheduling orders and filing deadlines, and when compliance was not forthcoming, the trial judge was empowered to end the litigation by ruling on the merits of the defendants' unopposed motions for summary judgment. We refuse to tie the trial judge's hands and take away one of the tools necessary to enforce his scheduling orders and organize his trial calendars."). Northern District of Illinois Local Rule 56.1(a) clearly sets out the consequences of failing to respond to a party's properly-filed statement of facts – they will be "deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). This is precisely what occurred.[FN 2] Further, it is well established that the existence of ongoing settlement negotiations is no excuse for a failure to meet Court-imposed deadlines. *Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 567 (7th Cir. 1992) ("there is no reason that settlement negotiations prevent a party from complying with scheduled court deadlines").

**STATEMENT**

[FN 2] As the Court noted in its opinion granting Harley-Davidson's motions, the Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)).

While the Court was aware that the parties had been talking about a possible settlement both before and after Harley-Davidson filed its summary judgment motions, the parties never requested (by motion, letter, or otherwise) that the Court postpone indefinitely a decision on those motions. Counsel for PSI states that the "Court was advised" that summary judgment proceedings were "put 'on hold'" by the parties' settlement discussions through a discussion that counsel for PSI had with the Courtroom Deputy. Even if PSI's counsel did "advise" the Courtroom Deputy at one time of the parties' settlement discussions, Harley-Davidson's reply brief noting PSI's failure to respond, plus the length of time that the summary judgment motion had been pending on the docket, eventually led the Court to conclude that any settlement talks had failed to yield agreement and that the long-pending motion was ripe for ruling. In any event, counsel for PSI recognizes in his reply brief that he "accept[s] responsibility for any miscommunications with this Court's staff," PSI Reply [94] at 3 n.1, and it was indeed his responsibility to secure some form of formal affirmative relief – *i.e.*, an extension of the briefing schedule or perhaps a stay of proceedings pending settlement talks.

The Court stresses that on many occasions it has entered orders granting such relief, which can be a sensible way to proceed where the parties wish to explore settlement prior to further litigation. But in almost every such instance, the Court has done so by agreement of the parties, not over one party's objection. Here, the contemporaneous e-mail correspondence between counsel indicates a logical explanation for why PSI never sought a stay in this case – namely, that Harley-Davidson was not on board with such a plan. In fact, any assumption that the parties mutually desired the Court to place the summary judgment motion "on hold" pending settlement discussions is belied by the record. In these circumstances, it was all the more incumbent upon PSI to tee up the issue with the Court and obtain formal relief of some kind – if necessary, over Harley-Davidson's objection – if PSI wished to preserve an opportunity to file a brief opposing summary judgment in the event that the case did not settle.

To vacate the Court's ruling now and allow PSI to file responses to Harley-Davidson's motions would be prejudicial to Harley-Davidson, in that it would unfairly give PSI a "preview" of the Court's ruling and would permit PSI to tailor its response to that preview. PSI cites no case in which a court has vacated an order in a situation remotely similar to this. For all of the above reasons, PSI's motion [89] is respectfully denied.

In its reply brief ([94] at 4-6), PSI appears to argue that the parties had reached full agreement on the terms of their settlement, and that PSI therefore is entitled to enforce the settlement agreement to which they agreed. PSI asks for leave to "submit its own motion for summary judgment to enforce the terms of the settlement." *Id.* at 6. No such leave is required; this case is still pending. PSI may file a motion to enforce a settlement agreement if it believes that such a motion has merit.

Finally, Harley-Davidson argues that it should be awarded its costs in opposing PSI's motion. H-D Resp. at 1. In essence, this request is akin to one for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. That request is denied without prejudice. If Harley-Davidson believes that it can satisfy the "high burden of showing that Rule 11 sanctions are warranted," *Lundeen v. Minemyer*, 2010 WL 5418896, at *3 (N.D. Ill. Dec.17, 2010) (citing *Fed. Deposit Ins. Corp. v. Tekfen Const. and Installation Co., Inc.*, 847 F.2d 440, 444 (7th Cir. 1998)), it may seek that relief by filing a separate motion.

**STATEMENT**

In view of the foregoing, the parties are given until 11/18/2011 to submit a joint status report advising the Court of (a) any further motions that the parties contemplate, (b) a proposed briefing schedule on such motions (if any), and (c) in the absence of further motions, their position(s) on what remains to be done in this litigation.